THOMAS D. McDEVITT, PLAINTIFF IN ERROR, v. HARRIET MAY DEACON, DEFENDANT IN ERROR.

Submitted July 5, 1912—Decided November 18, 1912.

The statute, section 20 of the Orphans' Court act, declares that a transcript of any will duly proved shall be competent evidence in any suit relating to real or personal estate, the same as if the will had been produced and duly proved. Such transcript, if it shows that the statutory requirements have been complied with, is *prima facie* proof of due execution of the will, and where in an action of ejectment the subscribing witnesses to the will testify to facts inconsistent with the attestation clause and their testimony given in proceedings to probate the will, which if believed would overthrow the *prima facie* case, it was not error to refuse a direction in favor of the party seeking to invalidate the will, for whether the *prima facie* case had been destroyed was a jury question.

On error to the Supreme Court.

For the plaintiff in error, *Charles C. Babcock* and *Garrison & Voorhees.*

For the defendant in error, *Theodore W. Schimpf* and *James M. Sheen.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff in error brought an action in ejectment against the defendant in error to recover the possession of an equal undivided eighth part of lands located in the county of Atlantic, in this state. At the opening of the trial it was admitted that one James J. McDevitt died seized of the lands described in the plaintiff's declaration, and that he left a paper purported to be his last will and testament which was admitted to probate in due form by the surrogate of the county of Atlantic, under which the defendant, as devisee, had taken possession of the lands to the exclusion of the plaintiff.

James J. McDevitt left four children, of whom the plaintiff was one, and it is not disputed that if his father died intestate he would be entitled to recover.

A certified copy of the will, and of all of the proceedings relating to its probate, were put in evidence, and it appears that the attestation clause was in due form, and that the subscribing witnesses certified that it was "signed, sealed, published and declared by the above-named testator as and for his last will and testament in the presence of us, who, in his presence and at his request and in the presence of each other, have hereunto subscribed our names as witnesses thereto." In the proceedings relating to the probate it appears that each of the subscribing witnesses declared under oath "that he saw the testator therein named sign and seal the same, and heard him publish, pronounce and declare the within writing to be his last will and testament," and that the other subscribing witness was present at the same time and signed his name as a witness, together with the deponent in the presence of the testator and at his request and in the presence of each other. The decree of the surrogate admitting the will to probate was also produced and offered in evidence. The plaintiff assailed the validity of the will upon three grounds, viz., the mental incapacity of the testator; that he was unduly influenced in

the making of the will, and that it was not executed according to the requirements of the statute. The jury found against the plaintiff on these issues, and the review now sought is based upon alleged errors committed at the trial.

The first, second and third assignments of error are too indefinite and general in character to warrant a consideration of them. They refer to the exclusion and admission of testimony without pointing out what the testimony complained of was, and it is therefore impossible to ascertain whether there was any exception sealed to support them.

The fourth assignment challenges the refusal of the court to direct a verdict in favor of the plaintiff, and this is rested principally upon the claim that the plaintiff had shown by the testimony of the subscribing witnesses called at the trial that the will was not properly executed, for the questions as to mental incapacity and undue influence were clearly for the jury. One of the subscribing witnesses, Leland French, was asked:

"*Q.* Now, will you please tell the court and jury just what happened and what was said respecting the placing of your name upon this paper?

"*A.* Why, I come in off my work around five o'clock. I was working 703 Atlantic avenue, or 706, and I went back in the shop and came out and Jim McDevitt says, 'Lee, come here. I want you to sign a paper.' I says, all right. Jim got up out of the chair and I sat down and signed my name, not knowing what it was, and Jim went and sat on the platform. I signed my name and got up and went out back, and then he called on Samuel Dodson to sign his name.

"*Q.* Did you see Mr. Dodson sign his name to the paper?

"*A.* Yes, and after that I forget exactly just what did take place after that. I know I went back. Well, I went back in the shop and I came out and bought oysters and went home. That is all I know.

"*Q.* Did Jim McDevitt say what it was?

"*A.* No.

"*Q.* Did he sign his name to it while you were there?

"*A.* Not in my presence, no."

When this witness was asked about the deposition which he signed in the surrogate's office concerning the execution of the will, he said that he did not understand what it was, that it was read "off fast." On cross-examination, the oath was read to him and he was asked whether he understood it and he answered, "Why, I suppose so, yes, sir," and he further testified with reference to the oath:

"*Q.* When it was read to you that you saw the testator therein named sign and seal the same, didn't you know what that meant?

"*A.* Yes, sir.

"*Q.* When you heard the words 'publish, pronounce and declare the within writing to be his last will and testament,' didn't you know what that meant?

"*A.* Yes, sir."

Samuel Dodson, the other subscribing witness, testified that at the time he signed as a witness that Mr. French, the other subscribing witness, was present; that the testator said, "Boys, I got a paper here I want you to sign and produced the paper and we signed it." He further testified that he knew he was signing Mr. McDevitt's will because he had spoken to him about it before. On cross-examination he was asked:

"*Q.* Now, was that signature on there at the time the will was presented to you for signature?

"*A.* Yes, sir.

"*Q.* Did he say anything about it at all?

"*A.* Not to my recollection, no, sir.

"*Q.* Are you positive that he didn't say anything about it?

"*A.* No, sir, I am not positive that he didn't."

The affidavit which the witness Dodson made when the will was probated being read to him, he was asked:

"*Q.* Now, freeing that of its verbiage, did you know that the substance of that affidavit was as I have read it when you signed it?

"*A.* Yes, sir.

"*Q.* And did you believe at the time you were signing that affidavit that the facts were as therein stated?

"*A*. Yes, sir.

"*Q*. Then you are not willing to swear that your recollection of the facts at this time is better than they were at that time, are you?

"*A*. No, sir.

"*Q*. And you believe now that the facts that were stated therein were true at the time you stated them?

"*A*. Yes, sir."

This witness also testified:

"*Q*. You also understood that you were swearing that Jim at the time he made the will was of sound and disposing mind and memory, didn't you?

"*A*. Yes, sir.

"*Q*. And you believe that, too, don't you?

"*A*. Yes, sir.

"*Q*. And the other facts as stated in the affidavit?

"*A*. Generally, yes, as far as I understand them; yes."

The court then read to this witness that portion of the attestation clause which stated that the will was "signed, sealed, published and declared by the above-named testator as and for his last will and testament in the presence of us, who in his presence and at his request, and in the presence of each other, have hereunto subscribed our names as witnesses thereto," and he was then asked:

"*Q*. Was what was above your signature and what I have read to you true?

"*A*. He told me that it was already signed by him—not at that time. I could not swear to that time.

"*Q*. What I want to know is whether the statements made as I have read them to you in this will and to which you subscribed are true?

"*A*. He declared it to me, yes, sir; I can't swear to whether he declared it in the presence of Leland French or not."

This testimony was given June 20th, 1911, the will was dated December 18th, 1909, and the affidavit taken July 25th, 1910.

Section 20 of the Orphans' Court act (*Comp. Stat., p.* 3819) declares that "the transcript of any will regularly

proved and recorded in the prerogative office or in the office of the surrogate of any county in this state, and duly certified by the register or surrogate under his official seal, shall be competent evidence in any court of this state in any suit or controversy in relation to the title to any estate, real· or personal, devised or bequeathed thereby, the same as if the original will had been produced and proved by the attesting witness."

It was held in *Allaire* v. *Allaire,* 8 *Vroom* 312, "that a transcript of the record of a probate of a will devising lands, made before the surrogate, is competent evidence in an action of ejectment if the record is in proper form, and while the heir may contend that upon the proof made before the surrogate the will has not been executed in compliance with the statute, still if the proofs contained in the record show that the will was executed with all the formalities required by the statute, the probate will be *prima facie* evidence, and will, of itself, be sufficient to establish the title, if not overcome by counter proof." The record in this case is in complete form and is *prima facie* evidence of the defendant's title. *Darnell* v. *Buzby,* 5 *Dick. Ch. Rep.* 725, and cases there cited.

In *Mundy* v. *Mundy,* 2 *McCart.* 290, Chancellor Green, sitting as Ordinary, speaking of the effect of the attestation clause, said: "The attestation clause, with the signatures of the witnesses, is *prima facie* evidence of the facts stated in it. It may be overcome by the witnesses themselves, or by other witnesses, or by facts and circumstances irreconcilable with its verity. If there is no attestation clause the case is different. In one case there must be affirmative proof of publication, and of the other requisites; in the other, there must be affirmative proof of the want of those requirements."

In the case now under consideration there was a proper attestation clause as well as a record in due form of the admission of this will to probate, and the present contention of the plaintiff in error is that the trial court should, as a matter of law, have directed the jury that it conclusively appeared that this *prima facie* case had been overthrown by the testi-

mony of the subscribing witnesses. In the case of *Allaire* v. *Allaire, supra,* the matter was before the Supreme Court on a rule to show cause, where the court might properly pass upon the question of preponderance of evidence, while in the present case strict rules of law are to be applied, one of which is that all debatable questions of fact must be determined by the jury, and whether the plaintiff had overthrown the *prima facie* case which the record established in favor of the defendant, was clearly a jury question. This will was executed in December, 1909. In July following the subscribing witnesses declared under oath that all the formalities necessary to constitute a due execution of this will had been observed, and whether they were then testifying to the truth, or correctly remembered the facts in June, 1911, a year after they had testified, as they did before the surrogate, seems to us to be essentially a jury question, and the trial court committed no error in submitting it to the jury for their consideration.

To assume as conclusive, and as sufficient to withdraw from the jury the question whether a will with a perfect attestation clause, duly admitted to probate upon the oath of the subscribing witnesses affirming the observance of all statutory requirements, the testimony of such witnesses given long after they assisted in the execution of a will, even if inconsistent with the attestation clause, and their testimony given in the proceedings admitting the will to probate, deprives the jury of the right to determine whether the *prima facie* case arising from the attestation clause and the decree of probate has been overcome, and removes from their consideration what is essentially a jury question, for the presumption of law is largely in favor of the due execution of a will so attested and a perfect attestation clause is a most important element of proof, and whether it has been destroyed by counter proof is a question of fact.

We think there was no error in refusing to direct a verdict for the plaintiff under the circumstances disclosed in this case.

We have examined the other assignments of error argued

by the plaintiff in error and find nothing in them which requires consideration.

No error appearing in this record the judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 14.

*For reversal*—None.